1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
4  Assistant United States Attorney
   Deputy Chief, Corporate & Securities Fraud Strike Force
5  MATT COE-ODESS (Cal. Bar No. 313082)
   Assistant United States Attorney
6  General Crimes Section
        1100/1200 United States Courthouse
7       312 North Spring Street
        Los Angeles, California 90012
8       Telephone: (213) 894-1259/8957
        E-mail:   alexander.schwab@usdoj.gov
9                 matt.coe@usdoj.gov

10 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

11

                    UNITED STATES DISTRICT COURT
12
                FOR THE CENTRAL DISTRICT OF CALIFORNIA
13
   UNITED STATES OF AMERICA,        No. CR **2:24-CR-00463-SB**
14
             Plaintiff,             <u>PLEA AGREEMENT FOR DEFENDANT</u>
15                                  <u>DAVID OZER</u>
                  v.
16
   DAVID OZER,
17
             Defendant.
18

19       1.   This constitutes the plea agreement between DAVID OZER

20 ("defendant") and the United States Attorney's Office for the Central

21 District of California (the "USAO") in the investigation of

22 defendant's embezzlement of funds from a television production

23 company account.  This agreement is limited to the USAO and cannot

24 bind any other federal, state, local, or foreign prosecuting,

25 enforcement, administrative, or regulatory authority.

26                    DEFENDANT'S OBLIGATIONS

27       2.   Defendant agrees to:

28

F I L E D
CLERK, U.S. DISTRICT COURT
JUL 30 2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ____rsm____ DEPUTY

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with wire fraud, in violation of 18 U.S.C. § 1343.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

THE USAO'S OBLIGATIONS

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining count of the information as against defendant.  Defendant

1  agrees, however, that at the time of sentencing the Court may

2  consider any dismissed charges in determining the applicable

3  Sentencing Guidelines range, the propriety and extent of any

4  departure from that range, and the sentence to be imposed.

5          d.    At the time of sentencing, provided that defendant

6  demonstrates an acceptance of responsibility for the offense up to

7  and including the time of sentencing, recommend a two-level reduction

8  in the applicable Sentencing Guidelines offense level, pursuant to

9  USSG § 3E1.1, and recommend and, if necessary, move for an additional

10  one-level reduction if available under that section.

11                        NATURE OF THE OFFENSE

12      4.    Defendant understands that for defendant to be guilty of

13  the crime charged in count one, that is, wire fraud, in violation of

14  18 U.S.C. § 1343, the following must be true: (1) defendant knowingly

15  participated in, devised, or intended to devise a scheme or plan to

16  defraud, or a scheme or plan for obtaining money or property by means

17  of false or fraudulent pretenses, representations, or promises, or

18  omitted facts; (2) the statements made or facts omitted as part of

19  the scheme were material; that is, they had a natural tendency to

20  influence, or were capable of influencing, a person to part with

21  money or property; (3) defendant acted with the intent to defraud;

22  that is, the intent to deceive and cheat; and (4) defendant used, or

23  caused to be used, an interstate wire communication to carry out an

24  essential part of the scheme.

25          a.    For a defendant to be guilty of wire fraud based on

26  omissions of material facts, he must have had a duty to disclose the

27  omitted fact arising out of a relationship of trust.  That duty can

28  arise either out of a formal fiduciary relationship, or an informal,

trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise.

PENALTIES

5. Defendant understands that the statutory maximum sentence that the Court can impose for wire fraud, in violation of 18 U.S.C. § 1343, is: twenty years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6. Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed or charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those charges. The parties currently believe that the applicable amount of restitution is at least $214,486 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

9.    Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future.

1  Defendant understands that while there may be arguments that

2  defendant can raise in immigration proceedings to avoid or delay

3  removal, removal is presumptively mandatory and a virtual certainty

4  in this case.  Defendant further understands that removal and

5  immigration consequences are the subject of a separate proceeding and

6  that no one, including his attorney or the Court, can predict to an

7  absolute certainty the effect of his conviction on his immigration

8  status.  Defendant nevertheless affirms that he wants to plead guilty

9  regardless of any immigration consequences that his plea may entail,

10 even if the consequence is automatic removal from the United States.

11                              FACTUAL BASIS

12     10.  Defendant admits that defendant is, in fact, guilty of the

13 offense to which defendant is agreeing to plead guilty.  Defendant

14 and the USAO agree to the statement of facts provided below and agree

15 that this statement of facts is sufficient to support a plea of

16 guilty to the charge described in this agreement and to establish the

17 Sentencing Guidelines factors set forth in paragraph 12 below but is

18 not meant to be a complete recitation of all facts relevant to the

19 underlying criminal conduct or all facts known to either party that

20 relate to that conduct.

21     Strong Studios, Inc., was a Delaware corporation and film

22 production company based in Charlotte, North Carolina.  Strong

23 Studios owned Safehaven 2022, Inc., a Delaware corporation, which was

24 a special production vehicle for Safehaven, a supernatural thriller

25 television series.  Defendant was a film producer and the president

26 of Strong Studios and owed fiduciary duties to both Strong Studios

27 and Safehaven 2022.  Safehaven 2022 held an account with Bank of

28 Hope, which is based in Los Angeles, California (the "Bank of Hope

                                    6

Account"). Defendant was the sole authorized signer on the Bank of Hope Account.

Ravenwood-Productions, LLC ("Ravenwood") was a financial backer of Safehaven 2022 and held 75 percent of the intellectual property associated with the Safehaven project.

Strong Studios was represented by an attorney based in Mooresville, North Carolina (the "Mooresville Attorney"). Ravenwood and its principal were represented by an attorney based in Woodland Hills, California (the "Woodland Hills Attorney").

Beginning no later than on or about February 23, 2023, and continuing through at least on or about January 3, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud Ravenwood as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, promises, and the concealment of material facts.

Without authorization and without disclosing to Ravenwood or its principal his intention to do so, defendant withdrew approximately $136,685 from the Bank of Hope Account for his personal use. To create the false appearance that the funds he embezzled were spent on legitimate production costs, defendant created fraudulent accounting records, including falsified invoices and forged a letter purportedly signed by his accountant, whose initials are A.C. A.C. did not write the letter, the contents of the letter were false, and defendant used A.C.'s name without A.C.'s authorization. Under false pretenses, defendant also caused the withdrawal of approximately $77,801 in additional funds from other bank accounts for Safehaven 2022. Thus,

1  defendant embezzled approximately $214,486 from Safehaven 2022.

2      On or about January 3, 2024, for the purpose of executing the

3  scheme to defraud described above, defendant caused the Mooresville

4  Attorney to transmit the falsified accounting records to the Woodland

5  Hills Attorney by means of email communication in interstate

6  commerce.

7                          <u>SENTENCING FACTORS</u>

8      11.  Defendant understands that in determining defendant's

9  sentence the Court is required to calculate the applicable Sentencing

10 Guidelines range and to consider that range, possible departures

11 under the Sentencing Guidelines, and the other sentencing factors set

12 forth in 18 U.S.C. § 3553(a).  Defendant understands that the

13 Sentencing Guidelines are advisory only, that defendant cannot have

14 any expectation of receiving a sentence within the calculated

15 Sentencing Guidelines range, and that after considering the

16 Sentencing Guidelines and the other § 3553(a) factors, the Court will

17 be free to exercise its discretion to impose any sentence it finds

18 appropriate up to the maximum set by statute for the crimes of

19 conviction.

20     12.  Defendant and the USAO agree to the following applicable

21 Sentencing Guidelines factors:

22     Base Offense Level:            7              USSG § 2B1.1(a)(1)

23     Loss Amount of More than
       $150,000                      +10            USSG § 2B1.1(b)(1)(F)
24
       Abuse of Position of Trust    +2             USSG § 3B1.3
25

26 Defendant and the USAO reserve the right to argue that additional

27 specific offense characteristics, adjustments, and departures under

28 the Sentencing Guidelines are appropriate, with two exceptions:

1         a.    The government agrees not to seek an adjustment for

2    use of sophisticated means under USSG § 2B1.1(b)(10).

3         b.    The parties agree that a downward departure of at

4    least two offense levels is appropriate pursuant to USSG § 5K2.12

5    (coercion and duress).

6      13.    Defendant understands that there is no agreement as to

7    defendant's criminal history or criminal history category.

8      14.    Defendant and the USAO reserve the right to argue for a

9    sentence outside the sentencing range established by the Sentencing

10    Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

11    (a)(2), (a)(3), (a)(6), and (a)(7).

12    <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

13      15.    Defendant understands that by pleading guilty, defendant

14    gives up the following rights:

15         a.    The right to persist in a plea of not guilty.

16         b.    The right to a speedy and public trial by jury.

17         c.    The right to be represented by counsel -- and if

18    necessary have the Court appoint counsel -- at trial.  Defendant

19    understands, however, that, defendant retains the right to be

20    represented by counsel -- and if necessary have the Court appoint

21    counsel -- at every other stage of the proceeding.

22         d.    The right to be presumed innocent and to have the

23    burden of proof placed on the government to prove defendant guilty

24    beyond a reasonable doubt.

25         e.    The right to confront and cross-examine witnesses

26    against defendant.

27

28

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty, defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

17. Defendant agrees that, provided the Court imposes a total term of imprisonment of no more than 27 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory

maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

18.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 10 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $215,000.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

19.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent

1  that such defenses existed as of the date of defendant's signing this
2  agreement.

3  <u>RESULT OF VACATUR, REVERSAL, OR SET-ASIDE</u>

4      20.  Defendant agrees that if the count of conviction is
5  vacated, reversed, or set aside, both the USAO and defendant will be
6  released from all their obligations under this agreement.

7  <u>EFFECTIVE DATE OF AGREEMENT</u>

8      21.  This agreement is effective upon signature and execution of
9  all required certifications by defendant, defendant's counsel, and an
10 Assistant United States Attorney.

11 <u>BREACH OF AGREEMENT</u>

12     22.  Defendant agrees that if defendant, at any time after the
13 effective date of this agreement, knowingly violates or fails to
14 perform any of defendant's obligations under this agreement ("a
15 breach"), the USAO may declare this agreement breached.  All of
16 defendant's obligations are material, a single breach of this
17 agreement is sufficient for the USAO to declare a breach, and
18 defendant shall not be deemed to have cured a breach without the
19 express agreement of the USAO in writing.  If the USAO declares this
20 agreement breached, and the Court finds such a breach to have
21 occurred, then: (a) if defendant has previously entered a guilty plea
22 pursuant to this agreement, defendant will not be able to withdraw
23 the guilty plea, and (b) the USAO will be relieved of all its
24 obligations under this agreement.

25     23.  Following the Court's finding of a knowing breach of this
26 agreement by defendant, should the USAO choose to pursue any charge
27 that was either dismissed or not filed as a result of this agreement,
28 then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

24.    Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.    Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

27.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

14

1 | promise, understanding, or agreement may be entered into unless in a

2 | writing signed by all parties or on the record in court.

3 | <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

4 |    28.   The parties agree that this agreement will be considered

5 | part of the record of defendant's guilty plea hearing as if the

6 | entire agreement had been read into the record of the proceeding.

7 | AGREED AND ACCEPTED

8 | UNITED STATES ATTORNEY'S OFFICE
   | FOR THE CENTRAL DISTRICT OF
9 | CALIFORNIA

10 | E. MARTIN ESTRADA
    | United States Attorney

12 | _____        7/30/24
    |                                        _____
13 | ALEXANDER B. SCHWAB / MATT COE-ODESS    Date
    | Assistant United States Attorney

14 | _____        7/23/2024
    |                                        _____
15 | DAVID OZER                             Date
    | Defendant

16 | _____        7/23/2024
    |                                        _____
17 | ALOKE CHAKRAVARTY                      Date
    | Attorney for Defendant
18 | DAVID OZER

                                15

1                           CERTIFICATION OF DEFENDANT

2          I have read this agreement in its entirety.  I have had enough

3    time to review and consider this agreement, and I have carefully and

4    thoroughly discussed every part of it with my attorney.  I understand

5    the terms of this agreement, and I voluntarily agree to those terms.

6    I have discussed the evidence with my attorney, and my attorney has

7    advised me of my rights, of possible pretrial motions that might be

8    filed, of possible defenses that might be asserted either prior to or

9    at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10   of relevant Sentencing Guidelines provisions, and of the consequences

11   of entering into this agreement.  No promises, inducements, or

12   representations of any kind have been made to me other than those

13   contained in this agreement.  No one has threatened or forced me in

14   any way to enter into this agreement.  I am satisfied with the

15   representation of my attorney in this matter, and I am pleading

16   guilty because I am guilty of the charge and wish to take advantage

17   of the promises set forth in this agreement, and not for any other

18   reason.

19   _David Ozer_____          7/23/2024
                                                   _____
20   DAVID OZER                                     Date
     Defendant

21

22

23

24

25

26

27

28

                                     16

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am DAVID OZER's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          7/23/2024
ALOKE CHAKRAVARTY                         Date
Attorney for Defendant
DAVID OZER

1

2

3

4                                   **EXHIBIT A**

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          CR No.

11           Plaintiff,               I N F O R M A T I O N

12           v.                       [18 U.S.C. § 1343: Wire Fraud; 18
                                      U.S.C. § 1028A(a)(1): Aggravated
13  DAVID OZER,                       Identity Theft; 18 U.S.C.
                                      § 981(a)(1)(C), 28 U.S.C.
14           Defendant.               § 2461(c): Criminal Forfeiture]

15

16       The United States Attorney charges:

17                             COUNT ONE

18                        [18 U.S.C. § 1343]

19  A.   INTRODUCTORY ALLEGATIONS

20       1.   At times relevant to this Information:

21            a.   Strong Studios, Inc., was a Delaware corporation and

22  film production company based in Charlotte, North Carolina.

23            b.   Strong Studios owned Safehaven 2022, Inc., a Delaware

24  corporation, which was a special production vehicle for Safehaven, a

25  supernatural thriller television series.

26            c.   Defendant DAVID OZER, a resident of Roslyn Heights,

27  New York, was a film producer and the president of Strong Studios and

28  owed fiduciary duties to both Strong Studios and Safehaven 2022.

1          d.    Safehaven 2022 held an account with Bank of Hope,

2  which is based in Los Angeles, California (the "Bank of Hope

3  Account").  Defendant OZER was the sole authorized signer on the Bank

4  of Hope Account.

5          e.    Ravenwood-Productions, LLC ("Ravenwood") was a

6  financial backer of Safehaven 2022 and held 75 percent of the

7  intellectual property associated with the Safehaven project.

8          f.    Strong Studios was represented by an attorney based in

9  Mooresville, North Carolina (the "Mooresville Attorney").

10          g.    Ravenwood and its principal were represented by an

11  attorney based in Woodland Hills, California (the "Woodland Hills

12  Attorney").

13  B.   SCHEME TO DEFRAUD

14       2.   Beginning no later than on or about February 23, 2023, and

15  continuing through at least on or about January 3, 2024, in Los

16  Angeles County, within the Central District of California, and

17  elsewhere, defendant OZER, knowingly and with the intent to defraud,

18  devised, participated in, and executed a scheme to Ravenwood as to

19  material matters, and to obtain money and property by means of

20  material false and fraudulent pretenses, representations, promises,

21  and the concealment of material facts.

22       3.   The scheme to defraud operated, in substance, as follows:

23          a.    Without authorization and without disclosing to

24  Ravenwood or its principal his intention to do so, defendant OZER

25  withdrew funds from the Bank of Hope Account for his personal use.

26          b.    In other instances, defendant OZER used false

27  pretenses to cause the withdrawal of funds from other Safehaven 2022

28  bank accounts for his personal use.

c.   To create the false appearance that the funds he embezzled were spent on legitimate production costs, defendant OZER created fraudulent accounting records, including falsified invoices and forged correspondence from his accountant.

d.   Defendant OZER caused the Mooresville Attorney to transmit the falsified accounting records to the Woodland Hills Attorney by means of email communication in interstate commerce.

C.   INTERSTATE WIRE COMMUNICATION

4.   On or about January 3, 2024, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, defendant OZER caused the transmission of a wire communication in interstate commerce, namely, an email from the Mooresville Attorney to the Woodland Hills Attorney.

1                              COUNT TWO

2                        [18 U.S.C. § 1028A(a)(1)]

3       5.   The United States Attorney realleges paragraphs 1, 3, and 4

4  here.

5       6.   On or about January 3, 2024, OZER knowingly possessed,

6  transferred, and used, without lawful authority, means of

7  identification that defendant OZER knew belonged to another person,

8  that is, the name of victim A.C., during and in relation to the

9  offense of Wire Fraud, a felony violation of Title 18, United States

10 Code, Section 1343, as charged in Count One of this Information.

1                      FORFEITURE ALLEGATION

2         [18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

3         7.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 18,

6    United States Code, Section 981(a)(1)(C) and Title 28, United States

7    Code, Section 2461(c), in the event of defendant DAVID OZER's

8    conviction of the offense set forth in Count One of this Information.

9         8.    Defendant OZER, if so convicted, shall forfeit to the

10   United States of America the following:

11             a.    All right, title, and interest in any and all

12   property, real or personal, constituting, or derived from, any

13   proceeds traceable to the offense; and

14             b.    To the extent such property is not available for

15   forfeiture, a sum of money equal to the total value of the property

16   described in subparagraph (a).

17        9.    Pursuant to Title 18, United States Code, Section

18   981(a)(1)(c), as incorporated by Title 28, United States Code,

19   Section 2461(c), defendant OZER, if so convicted, shall forfeit

20   substitute property, up to the total value of the property described

21   in the preceding paragraph if, as the result of any act or omission

22   of the defendant, the property described in the preceding paragraph,

23   or any portion thereof: (a) cannot be located upon the exercise of

24   due diligence; (b) has been transferred, sold to or deposited with a

25   third party; (c) has been placed beyond the jurisdiction of the

26   Court; (d) has been substantially diminished in value; or (e) has

27   //

28   //

                                    5

1 been commingled with other property that cannot be divided without
2 difficulty.

3

4                                          E. MARTIN ESTRADA
                                           United States Attorney
5

6

7                                          MACK E. JENKINS
                                           Assistant United States Attorney
8                                          Chief, Criminal Division

9                                          BRETT A. SAGEL
                                           Assistant United States Attorney
10                                         Chief, Corporate and Securities
                                              Fraud Strike Force
11
                                           ALEXANDER B. SCHWAB
12                                         Assistant United States Attorney
                                           Deputy Chief, Corporate and
13                                            Securities Fraud Strike Force

14                                         MATT COE-ODESS
                                           Assistant United States Attorney
15                                         General Crimes Section

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,            CR No.

11            Plaintiff,                  I N F O R M A T I O N

12            v.                          [18 U.S.C. § 1343: Wire Fraud; 18
                                          U.S.C. § 1028A(a)(1): Aggravated
13   DAVID OZER,                          Identity Theft; 18 U.S.C.
                                          § 981(a)(1)(C), 28 U.S.C.
14            Defendant.                  § 2461(c): Criminal Forfeiture]

15

16        The United States Attorney charges:

17                              COUNT ONE

18                          [18 U.S.C. § 1343]

19   A.   INTRODUCTORY ALLEGATIONS

20        1.   At times relevant to this Information:

21             a.   Strong Studios, Inc., was a Delaware corporation and

22   film production company based in Charlotte, North Carolina.

23             b.   Strong Studios owned Safehaven 2022, Inc., a Delaware

24   corporation, which was a special production vehicle for Safehaven, a

25   supernatural thriller television series.

26             c.   Defendant DAVID OZER, a resident of Roslyn Heights,

27   New York, was a film producer and the president of Strong Studios and

28   owed fiduciary duties to both Strong Studios and Safehaven 2022.

1        d.   Safehaven 2022 held an account with Bank of Hope,

2 which is based in Los Angeles, California (the "Bank of Hope

3 Account").  Defendant OZER was the sole authorized signer on the Bank

4 of Hope Account.

5        e.   Ravenwood-Productions, LLC ("Ravenwood") was a

6 financial backer of Safehaven 2022 and held 75 percent of the

7 intellectual property associated with the Safehaven project.

8        f.   Strong Studios was represented by an attorney based in

9 Mooresville, North Carolina (the "Mooresville Attorney").

10        g.   Ravenwood and its principal were represented by an

11 attorney based in Woodland Hills, California (the "Woodland Hills

12 Attorney").

13 B.   SCHEME TO DEFRAUD

14     2.   Beginning no later than on or about February 23, 2023, and

15 continuing through at least on or about January 3, 2024, in Los

16 Angeles County, within the Central District of California, and

17 elsewhere, defendant OZER, knowingly and with the intent to defraud,

18 devised, participated in, and executed a scheme to defraud Ravenwood

19 as to material matters, and to obtain money and property by means of

20 material false and fraudulent pretenses, representations, promises,

21 and the concealment of material facts.

22     3.   The scheme to defraud operated, in substance, as follows:

23        a.   Without authorization and without disclosing to

24 Ravenwood or its principal his intention to do so, defendant OZER

25 withdrew funds from the Bank of Hope Account for his personal use.

26        b.   In other instances, defendant OZER used false

27 pretenses to cause the withdrawal of funds from other Safehaven 2022

28 bank accounts for his personal use.

c.    To create the false appearance that the funds he embezzled were spent on legitimate production costs, defendant OZER created fraudulent accounting records, including falsified invoices and forged correspondence from his accountant.

d.    Defendant OZER caused the Mooresville Attorney to transmit the falsified accounting records to the Woodland Hills Attorney by means of email communication in interstate commerce.

C.   INTERSTATE WIRE COMMUNICATION

4.    On or about January 3, 2024, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, defendant OZER caused the transmission of a wire communication in interstate commerce, namely, an email from the Mooresville Attorney to the Woodland Hills Attorney.

COUNT TWO

[18 U.S.C. § 1028A(a)(1)]

5.    The United States Attorney realleges paragraphs 1, 3, and 4 here.

6.    On or about January 3, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant OZER knowingly possessed, transferred, and used, without lawful authority, means of identification that defendant OZER knew belonged to another person, that is, the name of victim A.C., during and in relation to the offense of Wire Fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count One of this Information.

1                          FORFEITURE ALLEGATION

2              [18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

3        7.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 981(a)(1)(C) and Title 28, United States

7   Code, Section 2461(c), in the event of defendant DAVID OZER's

8   conviction of the offense set forth in Count One of this Information.

9        8.   Defendant OZER, if so convicted, shall forfeit to the

10  United States of America the following:

11            a.   All right, title, and interest in any and all

12  property, real or personal, constituting, or derived from, any

13  proceeds traceable to the offense; and

14            b.   To the extent such property is not available for

15  forfeiture, a sum of money equal to the total value of the property

16  described in subparagraph (a).

17       9.   Pursuant to Title 18, United States Code, Section

18  981(a)(1)(c), as incorporated by Title 28, United States Code,

19  Section 2461(c), defendant OZER, if so convicted, shall forfeit

20  substitute property, up to the total value of the property described

21  in the preceding paragraph if, as the result of any act or omission

22  of the defendant, the property described in the preceding paragraph,

23  or any portion thereof: (a) cannot be located upon the exercise of

24  due diligence; (b) has been transferred, sold to or deposited with a

25  third party; (c) has been placed beyond the jurisdiction of the

26  Court; (d) has been substantially diminished in value; or (e) has

27  //

28  //

                                    5

1  been commingled with other property that cannot be divided without

2  difficulty.

3

4                                    E. MARTIN ESTRADA
                                     United States Attorney
5

6

7                                    MACK E. JENKINS
                                     Assistant United States Attorney
8                                    Chief, Criminal Division

9                                    BRETT A. SAGEL
                                     Assistant United States Attorney
10                                   Chief, Corporate and Securities
                                        Fraud Strike Force
11
                                     ALEXANDER B. SCHWAB
12                                   Assistant United States Attorney
                                     Deputy Chief, Corporate and
13                                      Securities Fraud Strike Force

14                                   MATT COE-ODESS
                                     Assistant United States Attorney
15                                   General Crimes Section

16

17

18

19

20

21

22

23

24

25

26

27

28